IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRENCE EDWARD HAMMOCK, : | |
| : | |
| Petitioner : | |
| : | |
| v. : | |
| : | CIVIL NO. 4:CV-04-1981 |
| : | |
| WARDEN JOHN NASH, ET AL., : | (Judge McClure) |
| : | |
| Respondents : | |

**MEMORANDUM AND ORDER**

October 11, 2005

**Background**

Terrence Edward Hammock ("Petitioner"), an inmate presently confined at the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania (FCI-Schuylkill), filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Service of the petition was previously ordered.

Named as Respondents are the following FCI-Schuylkill officials: Warden John Nash; Disciplinary Hearing Officer ("DHO") Kevin Bittenbender; Investigating Officer J. Tomlinson and Warden Ronnie Holt. Petitioner states that on March 31, 2004, he was charged with being one of three inmates who assaulted fellow prisoner Kenyatta

1

Brown. Following completion of an internal investigation, two other inmates identified as being assailants were exonerated, and Petitioner was issued a misconduct charging him with the assault on May 4, 2004. He was found guilty of the misconduct following a May 17, 2004 hearing before DHO Bittenbender. Hammock was sanctioned to a forfeiture of good time credits, as well as a loss of commissary, telephone and visitation privileges. He was also recommended for a transfer.

Hammock claims entitlement to federal habeas corpus relief on the grounds that DHO Bittenbender violated due process by: (1) denying Petitioner's request for the victim, Inmate Brown, to appear as a witness; (2) making a decision based on Officer Tomlinson's hearsay testimony regarding information provided from confidential informants; (3) imposing an excessive number of sanctions in violation of BOP policy. Documents accompanying the petition additionally assert that DHO Bittenbender was biased and that Petitioner requested but was denied assistance from a staff representative. Hammock seeks restoration of his good time credits, injunctive relief, compensatory and punitive damages.

Respondents argue that there is no basis for habeas corpus relief because: (1) Hammock failed to exhaust his administrative remedies; (2) the DHO complied with the BOP's guidelines regarding inmate discipline; (3) there was sufficient evidence to support the finding of guilt; (4) there was no actual prejudice from the alleged due process violations; and (5) Petitioner's request for monetary damages and injunctive relief are not properly raised in a habeas corpus petition.

2

**Discussion**

**A.    Exhaustion**

"A federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted his available administrative remedies." Bradshaw v. Carlson, 682 F. 2d 1050, 1052 (3d Cir. 1981).  The doctrine of exhaustion of administrative remedies is well established and a person is not entitled to judicial relief until the prescribed remedy has been exhausted.  McKart v. United States, 395 U.S. 185, 192 (1969); Arias v. U.S. Parole Comm., 648 F.2d 196, 199 (3d Cir. 1981)(holding that administrative remedies must be exhausted before seeking relief in federal court); U.S. ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1173-74 (3d Cir. 1989).

The BOP has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.[1]  See 28 C.F.R. §§

---

1. Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate.  This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not prevent an inmate from obtaining assistance in preparing a Request or Appeal, as provided in § 542.16 of this part.
> (b) Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation claims, and Freedom of Information or Privacy Act requests.  Staff

3

542.10-542.19 (1998). "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities." Id. at § 542.10.

The program provides that, with certain exceptions, "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[2] Id. at § 542.13(a). Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a). If a valid reason for delay is given, an extension of the filing time may be granted. Id. at 542.14(b). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

---

> shall inform the inmate in writing of the appropriate
> procedure if the Request or Appeal is not acceptable under
> the Administrative Remedy Program.

[2]. CCC inmates are not required to seek informal resolution. Id. at § 542.13(b). Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals. Id. Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution." Id.

4

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response. Id. "When the inmate demonstrates a valid reason for delay, these time limits may be extended." Id. The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond. Id. at § 542.18.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level." Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

Respondents acknowledge that Hammock initiated six (6) administrative grievances regarding his present claims. His first two grievances were rejected for procedural errors. Petitioner's third grievance "was denied and closed" on June 23, 2004. Record document no. 9, p. 4.   The fourth grievance was rejected on July 19, 2004, "because the request had already been responded to by the Region." Id. Next, Hammock filed an appeal of the Regional Office's decision which was rejected for a procedural error. His final administrative grievance was rejected on July 7, 2004

because it was filed at the wrong level.

Petitioner argues that before he initiated this habeas corpus action, he sought relief from the Warden, Regional Director, and General Counsel. Hammock states that he filed his appeal to the General Counsel around July 17, 2004 and the General Counsel never responded within the allotted 30 day period. See Record document no. 4, p. 12. His petition adds that the General Counsel failed to respond to his subsequent letters which inquired as to why a response was never given. Hammock also notes that the Respondents' contention that he filed a DHO appeal on May 12, 2004 is clearly erroneous because his disciplinary hearing was not conducted until May 17, 2004.

Based on this Court's review of the record, it is clear that Petitioner's present claims were presented to both the Warden and Regional Director. It is also uncontested that an appeal to the General Counsel was filed. However, there are factual discrepancies regarding whether Petitioner properly completed that final administrative review. Since there are presently material facts in dispute regarding the outcome of Hammock's appeal to the General Counsel, this Court will not grant the request for dismissal due to non-exhaustion at this time.

**B.   Due Process**

The Respondents next contend that there is no basis for relief because Hammock was afforded all due process protections which he was entitled to under BOP regulations. The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or

property, without due process of law . . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-26 (1976).

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), prisoners were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates have various procedural due process protections in a prison disciplinary proceeding. The Supreme Court recognized in Wolff that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Court held that a prisoner facing serious institutional sanctions such as a loss of good time credits is entitled to some procedural protection before penalties can be imposed. Id. at 563-71.

Wolff set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2)

7

twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  Id.  An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985).  In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  The Court of Appeals for the Third Circuit in Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992), thereafter recognized that the above due process requirements must be satisfied in a prison disciplinary hearing.

In Sandin v. Conner, 515 U.S. 472, 480-84 (1995), the United States Supreme Court reiterated that the Wolff due process safeguards must be provided when, as in the instant case, the challenged disciplinary proceeding results in a loss of good time credits.  See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit).  Since Hammock was sanctioned to a loss of good time credits, his allegations relating to his underlying disciplinary proceeding will be reviewed under the Wolff and Hill standards.

### 1.     **Staff Representation**

Respondents state that Petitioner declined representation and was provided with

all other due process protections. Hammock contends that he only declined staff representation when he was informed that the staff member he requested to act on his behalf was not available.

While <u>Wolff</u> provides inmates the right to be provided with a representative, it does not mandate that a prisoner has the right to be afforded a staff representative of his choosing. The undisputed record provides that Petitioner asked to be represented by a staff instructor, Ms. Krakowski. However, Ms. Krakowski was not available on the date of the hearing. When Petitioner was informed of Krakowski's unavailability, he declined representation. Since Petitioner could have requested representation from another staff member and made a voluntary pre-hearing decision to forego that option, a <u>Wolff</u> violation did not occur.

### 2.   **CSI Evidence**

Petitioner's second claim is that the DHO erred by allowing Officer Tomlinson to give hearsay testimony regarding confidential information provided by other inmates. The United States Court of Appeals for the Third Circuit has directed that when a prison disciplinary tribunal's decision is based on information received from a CSI, the two prong test announced in <u>Gomes v. Travisano</u>, 510 F.2d 537 (1st Cir. 1974), must be satisfied in order to guarantee due process. <u>Helms v. Hewitt</u>, 655 F.2d 487 (3d Cir. 1981), <u>rev'd on other grounds</u>, 459 U.S. 460 (1983).

In <u>Gomes</u>, the First Circuit held that:

> 1)   The record must contain some underlying factual

>>information from which the Board can reasonably conclude that the informant was credible or his information reliable;
>
> 2) The record must contain the informant's statement in language that is factual rather than conclusionary and must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement.

Gomes at 540.

The DHO's written Disciplinary Hearing Report initially indicates that CSI evidence was not used. However, the report subsequently notes that Tomlinson's testimony indicated that Hammock was identified by several other sources as being the assailant. In light of that acknowledgment, it appears that CSI information may have been taken into consideration by the DHO. Based on a review of the DHO's written report there is no indication that the DHO established that the confidential informants were both credible and reliable and their statements were made with personal knowledge. Based on the record to date, this Court cannot conclude that the DHO's apparent admittance of the CSI evidence was conducted in a manner which satisfied both prongs of Gomes. Consequently, Petitioner's claims relating to the use of the CSI evidence will proceed.

### 3. Ability to Call Witness

Hammock next contends that he was denied the opportunity to call the victim,

Inmate Brown, as a witness. It is undisputed that the DHO declined Hammock's request for the inmate witness, because the requested witness was the victim. Wolff also includes a procedural safeguard which requires that an inmate facing institutional disciplinary charges be granted an opportunity to call witnesses and present documentary evidence. However, this privilege is not absolute. Specifically, a prisoner's request to present evidence may be denied if it would threaten institutional security or correctional goals.

As noted above, Petitioner did not enjoy an absolute right to call witnesses. Second, the record clearly indicates that the victim never identified Hammock as being his attacker. Since the charges against Hammock were based on other evidence, a conclusion that the failure to allow Inmate Brown to testify was an abuse of discretion is not warranted. Furthermore, there were clearly legitimate penological objectives to support the DHO's decision. Under the circumstances of this case, this Court simply cannot conclude that the DHO's refusal to allow the Petitioner to call the inmate victim as a witness constituted a denial of due process.

### 4. **Sufficiency of the Evidence**

A federal court has no duty to independently assess the witnesses' credibility or weigh the evidence, but only to see that there was some evidence or basis in fact to support the finding of guilt. Hensley v. Wilson, 850 F.2d 264 (6th Cir. 1988). The court in Hensley added that a disciplinary tribunal's failure to explain why alibi testimony was not found credible did not constitute a due process violation. See id. at

11

278. Accordingly, DHO Bittenbender did not violate Petitioner's due process rights by not accepting his statement that he did not assault Inmate Brown.

The findings in a disciplinary hearing are not arbitrary or capricious if there exists a basis in fact to support a disciplinary hearing officer's findings. <u>Edwards v. White</u>, 501 F. Supp. 8 (M.D. Pa. 1979). In light of this Court's present inability to make a determination as to whether the CSI evidence was relied upon and if so, properly considered, it is unclear as to whether the outcome of Hammock's was supported by some evidence.

## **C.    DHO Sanctions**

Petitioner contends that it was improper for DHO Bittenbender to impose five (5) separate sanctions against him. Hammock states that because of his clear prison record, it was only permissible to impose two (2) sanctions. Respondents counter that since the DHO concluded that Petitioner's offense fell within the Greatest Severity Category, the sanctions imposed were permissible under BOP policy.

The Petitioner was found guilty of a Code 101 Assault of any person. Under applicable BOP regulations that offense is a prohibited act within the greatest severity category. As such, it was permissible for the DHO to impose the multiple sanctions which Hammock received. <u>See</u> 28 C.F.R. § 541.13(a)(1). This claim will be dismissed as meritless.

## **D.    Monetary Damages/Injunctive relief**

As previously noted, Hammock's petition in part seeks compensatory and

12

punitive damages as well as injunctive relief, specifically, the replacement of DHO Bittenbender. The Respondents argue that such requests are not properly raised in a habeas corpus action. This Court agrees.

Habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his or her confinement. <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 494 (1973); <u>Telford v. Hepting</u>, 990 F.2d 745, 748 (3d Cir. 1993), <u>cert. denied</u>, 510 U.S. 920 (1993). Based on the above described injunctive relief and monetary damages sought, "habeas corpus is not an appropriate or available federal remedy" with respect to those claims for relief. <u>See</u> <u>Linnen v. Arainis</u>, 991 F.2d 1102, 1109 (3d Cir. 1993); <u>Hahn v. Larkins</u>, Civil No. 97-0822 (M.D. Pa. June 30, 1997) (Rambo, C.J.); <u>Lee v. Larkins</u>, Civil No. 97-1095 (M.D. Pa. July 25, 1997) (Kosik, J.). Consequently,

**IT IS HEREBY ORDERED:**

1. Petitioner's claims for compensatory and punitive damages and his request that DHO Bittenbender be replaced are dismissed.

2. The Petitioner's allegations regarding failure to be provided with a staff representative and denial of his request to call the inmate victim as a witness are dismissed.

3. The claims that DHO Bittenbender improperly considered

confidential source information and that the finding of guilt was not supported by the evidence will proceed.

4. This matter will be scheduled for an evidentiary hearing.

    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge